YOUNG v. ALLEN et al.

(Circuit Court of Appeals, Sixth Circuit.   June 30, 1913.)

No. 2,472.

1. FRAUDULENT CONVEYANCES (§ 95*)—REAL PROPERTY—EQUITABLE INTEREST
   —ATTACK BY HUSBAND'S CREDITORS.
   Where title to land purchased with the funds of a wife is taken in
   the name of the husband, the equitable interest or estate of the wife
   under the Kentucky law is not open to attack by the husband's cred-
   itors, who have not been misled or defrauded by any voluntary act of
   hers, and who have failed to assert their claim before the completion of
   her legal title by conveyance from the husband to her.

   [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§
   243–288;  Dec. Dig. § 95.*]

2. BANKRUPTCY (§ 181*)—FRAUDULENT CONVEYANCE—VACATION—CONVEYANCE
   TO WIFE—RESULTING TRUST.
   Ky. St. § 2353, provides that, when a deed shall be made to one per-
   son and the consideration shall be paid by another, no trust shall result
   in favor of the latter, except where the grantee takes a deed in his own
   name without the consent of the person paying the consideration, or
   where the grantee, in violation of some trust, shall have purchased the
   lands deeded with the effects of another person. *Held*, that where the
   wives of bankrupts furnished the funds with which real estate was pur-
   chased in August, 1905, and both the wives testified that they never saw
   the deed which conveyed the land to the bankrupts, and until shortly
   before the execution of a conveyance of the land by the bankrupts to
   them on March 18, 1911, they did not know that the conveyance had
   been made to the bankrupts, instead of to themselves, and it was also
   shown that when the original deed was made the bankrupts promised
   immediately to reconvey the land to their wives, such reconveyance,
   though made within a month before bankruptcy intervened, was not
   fraudulent, nor subject to vacation by the bankrupts' trustee.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 271,
   273, 274;  Dec. Dig. § 181.*]

3. HUSBAND AND WIFE (§ 25*)—KNOWLEDGE OF HUSBAND—ADVERSE INTEREST
   —IMPUTATION TO WIFE.
   Where the bankrupts improperly took title in their own name to cer-
   tain land purchased with the funds of their wives, without the wives'
   knowledge or consent, the bankrupts' interest to conceal the facts pre-
   vented their knowledge from being imputed to their wives.

   [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 148–
   151, 153, 154, 525;  Dec. Dig. § 25.*]

Appeal from the District Court of the United States for the West-
ern District of Kentucky;  Walter Evans, Judge.

Action by S. M. Young, as trustee in bankruptcy of the estates of
Joseph T. Allen and Daniel C. Lewis, individually and as partners un-
der the firm name of Allen & Lewis, against Ethel M. Allen and
Eunice H. Lewis.  Judgment for defendants, and plaintiff appeals.  Af-
firmed.

This was a plenary suit to set aside a conveyance (bearing date March 18,
1911, and properly recorded) from the bankrupts to the defendants, the wives
of the bankrupts, of an undivided one-half interest in certain lands, and to
recover the rents and profits accrued, on the grounds that the deed was with-
out consideration and given and received in consummation of a fraudulent
scheme to hinder, delay, and defraud the creditors of the bankrupts.   April
16, 1911, Joseph T. Allen and Daniel C. Lewis, individually and as partners

composing the firm of Allen & Lewis, were adjudicated voluntary bankrupts. On May 8th complainant was appointed and qualified as trustee of both the individual and partnership estates. It was agreed that the estates are insufficient to pay in full either the individual or firm creditors. No jurisdictional question is raised, as plainly it could not be, because the bankruptcy proceeding was commenced after the amendment in 1910 of section 23 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], as amended by Act June 25, 1910, c. 412, § 7, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1499]). 1 Loveland on Bankr. (4th Ed.) 57; 2 Loveland on Bankr. (4th Ed.) § 536.

The land in dispute is comprised within 1,250 acres situated in Cumberland county, Ky., which belonged to the father of the defendants, Dr. W. I. Hutchens, who died intestate October 23, 1902. His widow and four children survive him. The dower interest of the former was set apart to her in lands other than the 1,250 acres mentioned, and the four children inherited that tract as tenants in common. August 15, 1905, two of the heirs—Mattie J. Carter (formerly Hutchens) and her husband, and W. L. Hutchens and wife—conveyed the undivided interest now in dispute to the bankrupts, and the deed was properly recorded November 3, 1905. Issue was joined by answer and replication. The defense in substance was that the deed last mentioned was given in pursuance of a purchase made by the defendants, Ethel M. Allen (formerly Hutchens) and Eunice H. Lewis (formerly Hutchens), of the undivided one-fourth interest of their sister and brother respectively in the 1,250-acre tract, but that through mistake of the draftsman of the deed, if not through fraud, the names of the husbands of the defendants were written in the deed as grantees; that the consideration paid to the grantors was money belonging to the defendants; that, although the defendants were not present at the time of the execution and delivery of the deed, this mistake was then observed by those present, and the husbands promised that it should be rectified; but that the defendants did not discover the error until shortly before the deed in dispute was executed and delivered to them by their husbands, the bankrupts. The decree below was in favor of the defendants, and the trustee appealed.

Duffin, Sapinsky & Duffin, of Louisville, Ky., and J. O. Ewing, of Burkesville, Ky., for appellant.

Gartner & Vaughan, of Louisville, Ky., and Porter & Sandidge, of Glasgow, Ky., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The controversy in the main depends upon the true nature of the transaction which culminated in the deed of August 15, 1905. As pointed out in the statement, that deed embraced an undivided one-half interest corresponding to the interest then owned in common by the defendants in the 1,250-acre tract, which the four children had inherited from their father. If the consideration for that conveyance was in truth paid with money belonging to the defendants, and with an understanding that the legal title should be placed in them, it is clear that the equitable estate in the property so conveyed has been in the defendants ever since the delivery of the deed. By statute of Kentucky it is provided:

"When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or

where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person." Section 2353, Carroll's Stat. (Ed. 1909) p. 1018.

[1] It is settled in Kentucky that such an equitable interest or estate in a wife is not open to attack by a creditor of her husband, where such creditor "has not been misled or defrauded by any voluntary act of hers, and who fails to assert his claim before the completion of her legal title." Campbell v. Campbell's Trustee, 79 Ky. 395, 399, 400; Sparks v. Colson, 109 Ky. 711, 716, 60 S. W. 540; Graham v. King, 96 Ky. 339, 346, 24 S. W. 430; Harlan v. Eilke, 100 Ky. 642, 644, 38 S. W. 1094.

[2] The consideration for the conveyance now sought to be set aside, and mentioned in the statement, was stated therein:

"The said E. M. Allen and Eunice H. Lewis furnished their husbands with money with which they paid for said interest in said land, with the express understanding that said one-half interest in said land was to be deeded to said E. M. Allen and Eunice H. Lewis; and whereas, by an oversight and mistake said deed of conveyance was made to said J. F. Allen and D. C. Lewis, when in fact and in truth it should have been made to said E. M. Allen and Eunice H. Lewis."

Upon a careful examination of the evidence the court below summed up its opinion thus:

"In short, in respect to that defense we find (somewhat in the language of section 2353 of the Kentucky Statutes) that the bankrupts, the grantees in the deed dated August 15, 1905, took that deed in their own names without the knowledge or consent of their wives, whose money paid the entire consideration therefor; that, though the grantees in the deed expressly promised to do otherwise, they held the deed and the title it conveyed until about the 18th day of March, 1911; that the defendants were ignorant of the fact that the deed was made to their husbands, and not to themselves, until about that date; and that, when informed of it, they demanded the deed, which was made accordingly to them. The deed thus obtained is attacked in this suit, and we think the attack must fail."

Unless this finding is not sustainable under the evidence, it is clear that the recital before quoted from the conveyance now in dispute is a complete answer to the complainant's case. The inquiries touching the facts so found may be stated thus: (a) Was the consideration given for the land conveyed by the deed of August 15, 1905, paid with moneys belonging to the defendants? (b) Were these moneys furnished with an understanding that the deed should be taken in the names of the defendants as grantees? (c) Was the deed taken in the names of the husbands without the consent of their wives?

After all that can fairly be said in criticism of the evidence, the testimony of Mrs. Allen, Mrs. Lewis, and also of their mother, Mrs. Hutchens, furnishes, without substantial contradiction, an affirmative answer to each one of these questions:

1. Mrs. Hutchens is the administratrix of the estate of the deceased husband and father, Dr. Hutchens; and she, as well as her defendant daughters, was cognizant of the fact that her daughters received more in cash from the estate than was required to pay for the undivided interests in the land in dispute. They all testify that the money used to pay for such interests belonged to the daughters; and if this was

not true, the testimony might have been contradicted by an intelligent person who was present when the transaction was closed, and who now appears in the interest of complainant.

2. The grantors were not living at the place where the defendants and their mother resided; indeed, the grantor brother, with his wife, lived in South Dakota. The defendants were not present when the consideration was paid and the deed delivered; such payment and delivery having occurred at Burkesville, where the sister grantor and her husband resided. Both defendants testified in substance that it was agreed in advance that they would purchase the undivided interests of their brother and sister, and that the conveyance should be made to them, Mrs. Allen and Mrs. Lewis. Mrs. Hutchens, the administratrix, and the husbands of the defendants, were present when the deed was delivered, and it was then discovered that the deed had been executed in favor of the husbands of defendants. In answer to a question as to whether the husbands were present, Mrs. Hutchens testified that they were, and then proceeded:

"I told them that Eunice [Mrs. Lewis] said her money was not to be paid out unless the deed was to her and Ettie [Mrs. Allen], and they all agreed, Joe and Daniel [meaning the husbands] agreed, to make the deed to them [the wives] the next week, and Mell Allen [a lawyer present] advised me to let it go that way, said they surely would make the deed, and it would save a whole lot of expense and trouble if the money was not sent on. There would have to be a new deed made and sent off again to South Dakota, and they both promised they would make the deed next week, and so I let it go that way."

3. It is not clear to whom the deed was delivered, although it seems that it was received by the bankrupt, Allen. It was placed of record; but both the wives testified explicitly that they never saw the deed, and that (until within a short time of the execution and delivery of the deed sought to be set aside) they had no knowledge of the fact that the names of their husbands, instead of their own, appeared as the grantees in the deed from their brother and sister. Defendants' husbands requested them to join in the execution of a mortgage upon the property, when the wives first learned that the title stood in the names of their husbands. The wives made immediate demand that the deed in issue be executed and delivered.

[3] It is claimed that Mrs. Hutchens, the mother, was the agent of her daughters at the time of the delivery of the deed of August 15, 1905, and that her knowledge is imputable to her daughters. We are not satisfied from the evidence that any such agency existed. Assuming, although it is not claimed, that such an agency resided in the husbands, it hardly need be said, in view of their conduct and of their interest to conceal the facts, that their knowledge is not imputable to their wives. American National Bank of Nashville v. Miller, 229 U. S. 517, 33 Sup. Ct. 883, 57 L. Ed. 1310, decided by the Supreme Court June 9, 1913. Plainly the title was taken in the names of the husbands without the knowledge or consent of their wives.

In reaching this conclusion we do not overlook the contention that the court below erred in its finding by misplacing the burden of proof; but examination of the opinion shows this contention to be erroneous.

It is to be observed, further, that the complainant called all of the witnesses; and we think that the testimony elicited, both on the direct and cross examinations, had the effect of discharging the burden, even though it were in terms cast upon the defendants.

It might be added, although not strictly necessary, that if the fiction of imputed knowledge of the defendants, through an agency of their mother, touching the deed of August 15, 1905, should be treated as applicable, the most that could be said would be that the bankrupts acquired the legal title to the property under an agreement that they would on the following week convey it to their wives. They were upon the plainest principles of equity and good conscience bound from that time forth to carry this agreement into execution. This results alike from the statute and the decisions of the state of Kentucky, before cited; and they are controlling in a case like this. There is nothing in the Bankruptcy Act to warrant the claim that the property in issue passed to the bankrupts. Thomas v. Taggart, 209 U. S. 385, 389, 28 Sup. Ct. 519, 52 L. Ed. 845; Smith v. Mottley, 150 Fed. 266, 268, 80 C. C. A. 154 (C. C. A. 6th Cir.); 1 Loveland on Bankr. (4th Ed.) §·408, and citations.

The decree below must be affirmed, with costs.