## BRINGARDNER LUMBER CO. v. BINGHAM et al.

Court of Appeals of Kentucky.
May 16, 1952.

Rehearing Denied Oct. 17, 1952.

E. B. Wilson, Pineville, for appellant.

H. L. Bryant, Pineville, for appellees.

STANLEY, Commissioner.

The case involves title to timber on an area of about 20 acres on the headwaters of Old House Branch, which flows into Little Creek, a tributary of Red Bird River. The appellant, Bringardner Lumber Company, brought the suit for trespass and for an injunction against Howard Bingham and Floyd Ball, partners doing business as the "B. & B. Lumber Company." The plaintiff pleaded the southern line of its property coincides with the line dividing Bell and Clay Counties, as established in 1873 by an Act of the Legislature, which transferred a strip from Clay to Bell County. The defendants admitted cutting trees on the tract and set up title to them, claiming through D. B. Bingham, who died in 1895 possessed of the land as alleged. Their land, or the timber right, is adjacent to plaintiff's property. Bingham and Ball claimed to a certain line as their north boundary, which, at first, they alleged was the county line, but alternatively pleaded if the boundary they claimed was not the true location of the county line, then there was an error in such description and as a matter of fact their boundary extended north of the county line into Clay County to the summit of a ridge. The tract forms a rough segment of a circle (an arc on a chord), or something like a rough triangle, the broad south base being apparently the true county line.

Many surveys were made and much historical and technical evidence was taken in an endeavor to locate the county line correctly. In this there was "confusion worse confounded." But when it had been pretty well developed that the straight east and

west line claimed by Bringardner was the proper location, and that the disputed area was not included in the record title of Bingham and Ball, they obtained an order setting aside the submission of the case and filed an amended answer in which they receded from their definite original position and asserted that the correct division line between the parties was the summit of the ridge regardless of the true location of the county line. They alleged that the top of the mountain had been agreed upon as the division line by the respective owners in time past, and it was in fact the true and correct division line to which they and their predecessors had held title by record and by adverse possession.

Bringardner's claim of title to land which embraces the disputed parcel goes back to the John H. Cheever patent, No. 46701, dated May 4, 1872. See Uhl v. Reynolds, Ky., 64 S.W. 498; Asher v. Uhl, 122 Ky. 114, 87 S.W. 307, 27 Ky.Law Rep. 938; Id., 122 Ky. 114, 93 S.W. 29, 29 Ky.L.R. 3961. Bingham and Ball claim under the junior grant of Bell County in 1890, known as the W. R. Knuckles grant No. 63727. Aside from being junior in age and void, KRS 56.190(2) it would appear that when the surveyors ran out the lines, although they were described as the Clay-Bell County line, the boundary actually took in a part of Clay County, which, of course, would of itself render the grant void. KRS 56.210; Hart v. Rogers, 9 B.Mon. 418, 48 Ky. 418.

■ The case has been fully briefed and orally argued. It would seem sufficient to state our conclusion that the appellants not only proved the true record title which gave the constructive possession to the boundary, but also proved the exercise of dominion over all of their lands. As pointed out in another opinion delivered today, Fletcher Lumber Co. v. Bringardner Lumber Co., Ky., 249 S.W.2d 38, involving Letcher County property, one holding title to a tract of land cannot take contiguous land into constructive possession by merely reaching out and claiming it as part of his own. The evidence does not show that the Binghams ever enclosed this area jutting to the north to the mountain top, nor does it convince us they ever actually occupied it or otherwise reduced it to actual occupation or possession of the character that could be deemed adverse to the title holder.

■ The appellees proved that it has been for years the family tradition that the ridge was the line. The appellee, Howard Bingham's father and his ancestors, the Ashers and Binghams, were the owners of the land on both sides of the mountain ridge. It is quite clear that at least the present generation believed the ridge to be the boundary. We agree with appellees that reputation is admissible to prove the location of an ancient corner or boundary. Hail v. Haynes, 312 Ky. 357, 227 S.W.2d 918. But we are here considering the quality and quantum of evidence of an agreement upon the location of a line that was uncertain through ambiguity of the instruments or overlapping of the descriptions. Proof of such parol agreement must be clear. 11 C.J.S., Boundaries, § 68. No evidence, specific or direct, is pointed out as proving that it was definitely agreed the top of the mountain or divide should be the boundary line. It seems to have been but a family tradition that two brothers, original owners, agreed that the ridge was or should be the location of the division line.

■ If we should accept the evidence of an understanding or agreement that the mountain ridge was or should henceforth be the common boundary line, the appellees are up against the obstacle of the absence of certain essential principles upon which an agreed or conditional boundary line will be sustained in law. It is not shown that (1) there was a bona fide controversy between the owners at the time respecting the true location; or (2) the line claimed to have been agreed upon was marked; or (3) actual possession was taken in accordance with such agreement; or (4) there was continuing acquiescence or mutual recognition by the coterminous landowners for a considerable length of time. Cline v. Blackburn, 292 Ky. 713, 168 S.W.2d 15; Steele v. University of Ky., 295

Ky. 187, 174 S.W.2d 129; Wagers v. Wagers, Ky., 238 S.W.2d 125; Redman v. Redman, Ky., 240 S.W.2d 553.

Neither party to an agreement as to the correct location of their boundary line, or their privies, may ignore that line in a subsequent deed where all the essential elements necessary to make it legal and binding are present. This must have special application to the rights of a party adversely affected by the failure of recognition by the other. Ingram v. Tucker, 151 Ky. 827, 152 S.W. 957; Carver v. Turner, 310 Ky. 99, 219 S.W.2d 409. But in the present case the situation is the converse. In the division of the lands of D. B. Bingham by commissioners, as least the part assigned to his son, Judge D. M. Bingham, father of the appellee, Howard Bingham, the county line was called for as the northern boundary, and it is very significant that no reference was made to any agreed or conditional line, or to any idea that the parties had been mistaken as to the true location of the county line.

Our conclusion is that the judgment is erroneous. It is reversed with directions to enter judgment for the plaintiff.